UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
WICHITA FALLS DIVISION

| | | |
|---|---|---|
| In re: JOE GAYLE BAKER, | § | |
| Debtor. | § | |
| | § | Bankruptcy Case No. 10-70221-HDH-12 |
| | § | |
| JOHN W. BAKER, | § | |
| | § | |
| Movant-Appellant, | § | |
| | § | |
| v. | § | Civil Action No. 7:13-CV-00049-O |
| | § | |
| JOE GAYLE BAKER, | § | |
| | § | |
| Appellee, | § | |
| | § | |
| v. | § | |
| | § | |
| CHARLES HAMILL JEFFREY TRUST, | § | |
| | § | |
| Appellee-Intervenor. | § | |
| | § | |

## MEMORANDUM OPINION AND ORDER

This is an appeal from the bankruptcy court's denial of a motion to compel and a motion to reconsider filed by John W. Baker, a creditor and successful bidder for a tract of land sold at a bankruptcy court-ordered auction of Debtor Joe Gayle Baker's farm and ranch real estate.  In the motion to compel, John W. Baker, Debtor's brother, contested the deed by which Debtor conveyed the tract of land to him, asserting the reservation of mineral interests in the deed violated the bankruptcy court's order of sale.  Following briefing and a hearing, the bankruptcy court denied the motion to compel, finding that the challenged deed conveyed all of Debtor's interest in the tract of land at the time of the sale, and that, alternatively, John W. Baker waived any objections by closing

1

on the sale.  John W. Baker unsuccessfully sought reconsideration.  Having considered the opening and response briefs, as well as the designated record on appeal submitted by the parties, the Court concludes that the bankruptcy court did not commit reversible error, and AFFIRMS the orders denying John W. Baker's motions to compel and to reconsider.

I.      **Background Facts and Proceedings Below**

Prior to summarizing the proceedings before the bankruptcy court, the Court sets forth the background facts concerning a pre-petition divorce action filed by Joan Baker, Debtor's wife, which involved the tract of land at issue in this appeal, described as "a tract of 627 acres of land, more or less, out of Section No. TWO HUNDRED FIVE (205), Block H, W. & NW. RR. Co. Survey, Abstract No. 472, in Hardeman County, Texas" (hereinafter "Poppies").  Bankruptcy Record ("BR") Vol. II, pp. 175-178.

A.      *The Divorce Proceedings*

In March 2010, Joan Baker, wife of Debtor Joe Gayle Baker ("Debtor")[1], filed for divorce in the 46th Judicial District Court for Hardeman County, Texas, styled *In the Matter of the Marriage of Joan Baker and Joe Gayle Baker*, Cause No. 10486.  On November 19, 2010, as reflected in a letter ruling from the Honorable Judge Dan Mike Bird, the divorce was finalized.  BR Vol. III, pp. 473-476.  On or about February 25, 2011, Debtor and Joan Baker entered into an Agreed Divorce Decree, approved by Judge Bird, in which they agreed to a division of all their real property, separate and community, surface and mineral. The relevant portions of the Agreed Divorce Decree provide as follows:

---

[1]Because Debtor Joe Gayle Baker passed away during this litigation, his sons Jimmy Joe and John Jay Baker, as executors of his Probate Estate, were substituted as parties in the proceedings below.  The Court will continue to refer to Debtor Joe Gayle Baker as "Debtor" and "Appellee."

*Findings*

The court finds that the Gift Deed is valid and that the parties own one half interest

in and to all of the real estate . . . The court further finds that, by the division of the

real estate proposed by both sides, the parties adhere to the position that the Court has

authority to divest the parties of separate property, so long as there is a quid pro quo.

The Court finds that there is authority for the proposition that the Court may partition

the property contemporaneously with the divorce proceeding. [BR Vol. III, p. 378].

*Division of Marital Estate*

The Court finds that the following is a just and right division of the parties' marital estate,

having due regard to the rights of each party.

Property to Husband

IT IS SO ORDERED AND DECREED that the husband, Joe Gayle Baker,

is awarded the following as his sole and separate property, and the wife

divested of all right, title, interest, and claim in and to . . . Poppies. [BR Vol.

III, p. 378, 381].

*Transfer and Delivery of Property*

Joe Gayle Baker is ORDERED to execute, have acknowledged, and deliver to Cyndi

L. Shank these instruments within 10 days of the signing of this Decree by the Court:

1.      Special Warranty Deed in the form attached to this Decree of Divorce

as Exhibit Husband - 1 . . . [BR Vol. III, p. 400].

Joan Baker is ORDERED to execute, have acknowledged, and deliver to Bruce A.

Martin these instruments within 10 days of the signing of this Decree by the Court:

1.      Special Warranty Deed in the form attached to this Decree of Divorce

as Exhibit Wife - 1 . . .

This decree shall serve as a muniment of title to transfer ownership of all property

awarded to any party in this Final Decree of Divorce.  [BR Vol. III, p. 401].

"Special Warranty Deed - Exhibit Wife - 1" –  attached as an exhibit to the Divorce Decree

and incorporated by reference – provides in relevant part as follows:

*Reservations from Conveyance and Exceptions to Conveyance and Warranty*

Grantor [Joan Baker] reserves all oil, gas, and other minerals in and under and that may be

produced from the property."  [BR Vol. III, p. 451].

"Special Warranty Deed - Exhibit Husband - 1," as part of the quid pro quo approved by

Judge Bird, similarly provides:

*Reservations from Conveyance and Exceptions to Conveyance and Warranty*

Grantor [Joe Gayle Baker] reserves all oil, gas, and other minerals in and under and that may

be produced from the property." [BR Vol. III, p. 429].

**B.      *Debtor's Chapter 12 Bankruptcy Petition & Reorganization Plan***

On May 21, 2010, approximately two months after Joan Baker filed for divorce, Debtor filed

a voluntary Chapter 12 petition in the United States Bankruptcy Court for the Northern District of

Texas, Wichita Falls Division, Cause No. 10-70221-HDH-12.  Chapter 12 of the Bankruptcy Code

allows farmer debtors with regular annual income to adjust their debts subject to a reorganization

plan.  11 U.S.C. § 1201, *et seq.*  Following a lift of the automatic stay to allow the divorce to proceed

subject to the bankruptcy court's ability to review the property division, on February 12, 2011, Joan

Baker filed a Motion to Approve Final Decree of Divorce with ordered-to-be-signed deeds as

exhibits, for bankruptcy court approval of the division of property.  BR Vol. IV, pp. 479-563.  After notice, and with no objections filed, on March 11, 2011, the bankruptcy court granted the motion, approved the property division in the Final Divorce Decree, and ordered the Debtor to execute all documents to effectuate the Decree of Divorce.  BR Vol. IV, pp. 564-65.  No appeal was taken from the order.

On December 2, 2011, the bankruptcy court confirmed the Debtor's Chapter 12 Plan of Reorganization.  *See* Order Confirming Debtor's Chapter 12 Plan of Reorganization ("Plan") and Supplemental Order.  BR Vol. II, pp. 161-248.  Pursuant to the terms of the Plan and Supplemental Order, the bankruptcy court directed Debtor to sell, through the auction process, certain farm and ranch real estate, including Poppies.  BR Vol. II, pp. 175-178.  On February 9, 2012, Debtor filed a Report of Sale informing the bankruptcy court that John W. Baker was the highest bidder on Poppies, submitting a bid in the amount of $319,456.50.  BR Vol. II, pp. 249-264.

On March 1, 2012, the bankruptcy court issued an Amended Order Approving Sale, which provided in relevant part:

¶ 3     Debtor, without any need for further Court authority, is authorized to execute a general warranty deed conveying the estate's interest, surface and mineral, in the property to the purchaser and is authorized to execute any additional documents deemed proper and necessary to convey the Property as may be necessary and appropriate to close the sale.

¶ 5     After the sale has closed, it is not subject to rejection, avoidance, or challenge by Debtor, his sons, Jim Baker and John Baker, Debtor's successors and assigns, any Chapter 7 Trustee or other bankruptcy trustee and any creditor, claimant, or party-in-interest of Debtor's bankruptcy estate.

¶ 6     The transfer of title to the Property . . . is a valid, legal, and effective transfer of the Property, and vests the Purchaser with all of Debtor's rights, title, and interest in and to the Property free and clear of all claims, encumbrances, liens, and interests that have or could have been asserted by Debtor, any creditor, or any other person or entity.

5

BR Vol. II, p. 157.

Pursuant to the terms of the Amended Order Approving Sale, Debtor executed a general warranty deed (hereinafter, the "Deed") to John W. Baker, conveying Debtor Estate's interest in Poppies, and excepting "mineral severances."  BR Vol. II, pp. 82-86.  In addition, as part of the sale of Poppies, Debtor and John W. Baker each signed a Texas Real Estate Commission Farm and Ranch Contract, which required certain title commitments.  Prior to the closing, the Hardeman County Abstract Company retained by the bankruptcy court provided John W. Baker with a title commitment containing a reservation for "all oil, gas, and other minerals in and under and that may be produced from the property . . . reserved unto grantor in Special Warranty Deed from Joan Baker to Joe Gayle Baker, dated March 2, 2011, recorded under Clerk's File No.D111-52947 in the official Public Records of Hardeman County, Texas[.]" BR Vol IV, p. 611.  The title commitments also provided:

(a) 6. B. COMMITMENT: Within 20 days after the Title Company receives a copy of this contract, Seller shall furnish to Buyer a commitment for title insurance . . .

(b) 6. D. OBJECTIONS: Buyer may object in writing to (i) defects, exceptions, or encumbrances to title . . . disclosed in the Commitment . . . Buyer must object the earlier of (i) the Closing Date or (ii) 7 days after Buyer receives this Commitment . . . Buyer's failure to object within the time allowed will constitute a waiver of Buyer's right to object . . .

BR Vol. IV, p. 621-22.  John W. Baker did not object.

The proceeds from the sale of Debtor's property (including Poppies) paid all remaining creditors in the bankruptcy case, including a payment of $100,000.00 to John W. Baker under the Plan.  BR Vol. II, p. 172.

### C.     Charles Hamill Jeffrey Trust Purchases Mineral Interests from Joan Baker

Prior to the court-ordered auction of Debtor's farm and ranch real estate, on December 29, 2011, pursuant to a Special Warranty Deed, Charles Hamill Jeffrey Trust ("CHJT") purchased the minerals reserved by Joan Baker in certain tracts of land, including Poppies.  BR Vol. IV, pp. 739-40.  On January 30, 2012, the CHJT filed a Motion to Approve Confirmation and Decree of Divorce Deeds, which included a request that the bankruptcy court approve "Exhibit Wife - 1 Special Warranty Deed," in which Joan Baker reserved mineral rights in the land she conveyed to Debtor. BR Vol. IV, pp. 566-589.  On March 1, 2012, the bankruptcy court granted CHJT's motion.  BR Vol. I, p. 62.

### D.     Bankruptcy Court's Disposition of John W. Baker's Motions

On October 5, 2012, John W. Baker filed this contested matter by way of a motion to compel, asking the bankruptcy court to correct the Deed, by which Debtor conveyed Poppies to him, to reflect that the conveyance included  the mineral interests in Poppies.  BR Vol. II, pp. 77-80.   In support, John W. Baker argued that: (i) the Deed failed to comply with the Amended Order of Sale, since it reserved the mineral interests in Poppies; (ii) Debtor's refusal to comply with his request for conveyance of the mineral rights created a "cloud upon the title of Movant with respect to his mineral interests purchased by him, and said interests have been conveyed (unlawfully) by Joan Baker to a third party, the Charles Hamill Jeffrey Trust"; and (iii) the conveyance from Joan Baker to CHJT was unlawful, since "Exhibit Wife -1, Special Warranty Deed," by which Joan Baker

7

conveyed Poppies to Joe Gayle Baker but reserved her mineral rights, was "*contrary to the divorce decree*[.]"  BR Vol. II, p. 79 (original emphasis).

In response to the motion to compel, Debtor argued that: (i) the Deed conveyed "the entire interest that the Estate had in the land Movant purchased including any and all mineral interests that the Estate owned"; (ii) Movant knew of the exception to the mineral rights in Poppies when he took the property, pursuant to the title commitment that Hardeman County Abstract Company provided him prior to the sale closing, which included reference to the March 2, 2011 Special Warranty Deed from Joan Baker to Joe Gayle Baker, reserving mineral rights to Joan; (iii) Movant waived any right to complain because he did not make objection to the title commitment and finalized the sale; and (iv) "movant's complaint is not with [Debtor] [but] arises from the fact that Movant claims that the warranty deed from Debtor's former wife to Debtor retained a portion of minerals in violation of the Decree of Divorce [and] [i]n order to get the mineral interest from Debtor's former wife, she would have to execute a correction deed[.]"  BR Vol. II, pp. 116-17.

On January 16, 2013, the bankruptcy court held a hearing.  BR Vol. III, pp. 265-369 (Hearing Transcript).  On January 22, 2013, the bankruptcy court denied the motion to compel, stating:

> . . . The Motion asks for the Court to require Debtor's representatives, Jimmy Joe and John Jay Baker, to execute an amended warranty deed that conveys the mineral interests in a piece of property known as "Poppies." Prior to the hearing, the representatives of the Debtor filed a response stating that the estate did not own these mineral interests at the time the [deed] was executed, they therefore transferred all of the estate's interest in the property, and John W. Baker was aware of this as well as the title exceptions at the time he closed on the sale.
>
> At the conclusion of the hearing, the Court took the Motion under advisement for further consideration, and now finds that the Motion should be denied, largely for the reasons articulated in the response to the motion.
>
> The record made at the hearing demonstrates two things.  First, the [Deed] conveyed to the movant all the surface and mineral interest that the estate owned at

the time of the conveyance.  More importantly, the movant as buyer was made aware of exceptions to the conveyance in the title commitment, did not object to such exceptions, and closed the sale.  Under the sales contract, such title problems as those complained of by Movant were waived by closing.

  Accordingly, the Motion will be denied.

BR Vol. V, pp. 847-48.

  On February 5, 2013, John W. Baker filed a motion to reconsider.  On February 15, 2013,

the bankruptcy court denied the motion, concluding that:

  The Amended Order Approving Sale, entered on March 1, 2012, vested the Purchaser with all of "Debtor's right, title and interest in and to the property free and clear of all claims, encumbrances, liens and interests."  *See* Amended Order Approving Sale p. 2.  It also says that after the sale has closed, it is not subject to rejection, avoidance, or challenge by Debtor of his sons, Jim Baker and John Baker. *Id.*

  The Debtor did not own any right, title or interest in the mineral estate at the time of the sale.  Prior to closing, John W. Baker received a title commitment that contained an exception for mineral interests that had already been transferred.  Knowing this, he did not object and decided to close the sale.  The liens and claims that were terminated and attached to the proceeds were liens and claims on what the Debtor owned, and not the mineral estate that had been transferred previously.

  For these reasons, the Court finds no mistake of law or fact, and the motion is therefore denied.

BR Vol. V, p. 850.

  John W. Baker filed a timely notice of appeal of the bankruptcy court's orders.  The issues

have been briefed and the matter is ripe for adjudication.[2]

---

  [2]The record below shows that on March 1, 2013, the bankruptcy court entered an order approving a settlement in principle between John W. Baker and Debtor, and directing them to work toward an agreed order providing that all disputes between them regarding the motion to compel were resolved. BR Vol. V, pp. 851-52.  The record below contains no such agreed order.  John W. Baker filed this appeal naming Joe Gayle Baker as an appellee.  On June 25, 2013, Debtor-Appellee Joe Gayle Baker filed "Appellee Joe Gayle Baker's Joint Motion (with Appellant John W. Baker) to Grant Appellant's Appeal, Approving of Appellant's Brief; and Requesting Reversal of the Trial Court's Judgment Below and/or Remand with Instructions" (ECF No. 7).  To the extent Joe Gayle Baker is challenging the bankruptcy court's orders

## II.      Standard of Review

A bankruptcy court's findings of fact are subject to review for clear error, and its conclusions

of law are reviewed *de novo*.  *In re Morrision*, 555 F.3d 473, 480 (5th Cir. 2009).  A finding of fact

is clearly erroneous when, although there is evidence to support it, the court is left with the definite

and firm conviction that a mistake has been committed.  *See id.*  The clear error standard is not used

when the court from which the appeal is taken applied legal principles to essentially undisputed facts.

*Moore v. M/V Angela*, 353 F.3d 376, 388 (5th Cir. 2003).  "The bankruptcy judge's opportunity to

make first-hand credibility determinations entitled its assessment of the evidence to deference."  *In*

*re Perry*, 345 F.3d 303, 309 (5th Cir. 2003) (citation omitted).

## III.      Discussion

In his opening brief, Appellant John W. Baker raises seven points of error.  In its response

brief, CHJT urges the Court to dismiss the appeal and affirm the bankruptcy court's order for the

reasons stated by the bankruptcy court in its final orders below.

### A.      *First Point of Error - Bankruptcy Jurisdiction*

In his first point of error, John W. Baker challenges the bankruptcy court's jurisdiction to

enter final orders denying his motions to compel and reconsider.  John W. Baker acknowledges the

bankruptcy court's jurisdiction "to rule on John W's request to compel Debtor to conform his

warranty deed with that court's Orders regarding the sale, and clarifying any differences between

---

below, the Court is without jurisdiction to hear his appeal.  A party seeking to appeal a bankruptcy court's
final "judgment, order, or decree" to a district court has fourteen days following entry of the bankruptcy
court's judgment, order, or decree.  Fed. R. Bankr. P. 8002(a).  When a timely notice of appeal is filed, any
other party may file a notice of appeal within fourteen days of the date on which the first notice of appeal
as filed.  *Id.*  Joe Gayle Baker did not file a notice of appeal within fourteen days of John W. Baker's notice
of appeal.  Failure to file a timely notice of appeal deprives the district court of jurisdiction to consider the
appeal.  *In re Bayhi*, 528 F.3d 393, 401 (5th Cir. 2008).  Further, because this requirement is jurisdictional
in nature, it cannot be waived.  *Id.*

those orders and the warranty deed given by Debtor to him, as such are 'core' matters." Appellant's Brief at 14.   John W. Baker argues, however, that the bankruptcy court lacked jurisdiction to determine the effect upon his title and deed to mineral interests on Poppies due to the failure of Joan Baker's Special Warranty Deed to convey mineral interests to Joe Baker in compliance with the divorce decree.   *Id.* at 4.   Appellant, contends that "[a]lthough John W improvidently invited the bankruptcy court's ruling, it simply did not have jurisdiction to determine non-core title issues arising from a pending state court action in the Hardeman County District Court."   *Id.* at 12 (citing 28 U.S.C. § 157(c)(2)).   The Court rejects Appellant's jurisdictional challenge.

Jurisdiction for bankruptcy cases is rooted in the provisions of 28 U.S.C. § 1334 which provide, with certain exceptions not at issue, that the district courts of the United States have "original and exclusive jurisdiction of all case under title 11." 28 U.S.C. § 1334(a).   Bankruptcy proceedings are divided into three categories: those that "aris[e] under title 11"; those that "aris[e] in" a title 11 case, and those that are "related to a case under title 11."   *See* 28 U.S.C. § 157(a). "District courts may refer any or all such proceedings to the bankruptcy judges in their district."   *Id.* In the Northern District of Texas, pursuant to Miscellaneous Rule No. 33, these matters are automatically referred to the bankruptcy judges.   *See* Order of Reference of Bankruptcy Cases and Proceedings *Nunc Pro Tunc* (N.D. Tex.   August 23, 1984).   "The manner in which a bankruptcy judge may act on a referred matter depends on the type of proceeding involved."   *Id.*   Pursuant to 28 U.S.C. § 157(b)(1):

> Bankruptcy judges may hear and determine all cases under title 11 and all core proceedings under title 11, or arising in a case under title 11, referred under subsection (a) of this section, and may enter appropriate orders and judgments, subject to review under section 158 of this title.

28 U.S.C. § 157(b)(1); *see also In re Southmark Corp.*, 163 F.3d 925, 930 (5th Cir. 1999) (["A] proceeding is core under § 157 if it invokes a substantive right provided by title 11 or if it is a proceeding that, by its nature, could arise only in the context of a bankruptcy case."). For "non-core proceedings" otherwise related to a case under title 11, a bankruptcy judge may only "submit proposed findings of fact and conclusions of law to the district court[,]" and it is the district court which enters final judgment in such cases after reviewing *de novo* any matter to which a party objects. *See* 28 U.S.C. § 157(c)(1).

Recently, the Supreme Court addressed "whether a bankruptcy judge had the authority under 28 U.S.C. § 157 and Article III to enter final judgment on a counterclaim filed by a [bankruptcy petitioner] in [the petitioner's] bankruptcy proceedings." *Stern v. Marshall*, — U.S. —, 131 S.Ct. 2594, 2595 (2011). The Court held that while the bankruptcy court had statutory authority to enter a final judgment under § 157, it lacked authority under Article III of the United States Constitution because it "exercised the 'judicial power of the United States' in purporting to resolve and enter final judgment on a state common law claim." *Id.* at 2611. Under *Stern*, it is clear that because a bankruptcy court is not an Article III court, it cannot enter final judgment on state common law counterclaims "raised independent of federal bankruptcy law." *Id.*

As a preliminary matter, the Court does not read the bankruptcy judge's decisions below as indicating that he made a final determination that Joan Baker's Special Warranty Deed ("Exhibit Wife - 1") was, in fact, consistent with the divorce decree. Instead, looking at the plain and unambiguous language of the Deed and at its prior order approving the division of property in the Final Divorce Decree, to which no party objected below, the bankruptcy judge found that, at the time of the sale of Poppies by Debtor to John W. Baker, Debtor's Estate did not own the mineral

interests of Poppies.   Therefore, according to the bankruptcy judge, the Debtor Estate's Deed conveyed its entire interest in Poppies and did not violate the Amended Order of Sale.  *See* Order Denying Motion to Compel (BR Vol. V, pp. 847-48); Order Denying Motion to Reconsider (BR Vol. V, p. 850).   Simply put, Appellant's expansive reading of the bankruptcy judge's orders is unsupported by the text of the orders.

As to jurisdiction, John W. Baker's claim that the Deed violated the bankruptcy court's Amended Order of Sale, and therefore needed to be altered to provide Appellant mineral rights, is a claim "arising in" a case under title 11.  28 U.S.C. § 157(b)(1).  Otherwise stated, John Wayne Baker's filing of this contested matter, which required the bankruptcy judge to interpret and enforce its Amended Order of Sale and the Deed in order to carry out the Chapter 12 Plan, is a "proceeding that, by its nature, could arise only in the context of a bankruptcy case." *In re Southmark Corp.*, 163 F.3d at 930.  Further, although the parties have not raised the issue, the Court *sua sponte* concludes that the Supreme Court's decision in *Stern* does not alter the analysis, as the bankruptcy court did not enter a final order or judgment on a state common law counterclaim or claim "raised independent of federal bankruptcy law." *Stern*, 131 S.Ct. at 2611.

In addition, the bankruptcy court "plainly had jurisdiction to interpret and enforce its own prior orders." *Travelers Indemnity Co. v. Bailey*, 557 U.S. 137, 151 (2009) (citing *Local Loan Co. v. Hunt*, 292 U.S. 234, 239 (1934)) ("That a federal court of equity has jurisdiction of a bill ancillary to an original case or proceeding in the same court, whether at law or in equity, to secure or preserve the fruits or advantages of a judgment or decree rendered therein, is well settled . . . These principles apply to proceedings in bankruptcy.")  The resolution of Appellant's motion to compel is based on

the interpretation and enforcement of the bankruptcy court's March 2, 2011 Amended Order Approving Sale.[3]

Even were this not a core proceeding, the Court determines that John W. Baker's failure to object below to the bankruptcy court's adjudicative power to enter final orders constitutes waiver of this argument on appeal. *See generally Stern*, 131 S.Ct. at 2607-2608 (noting that a litigant who fails to object to bankruptcy court's authority to resolve his motions, and only belatedly raises error when outcome dissatisfactory, may forfeit right to later object); *id.* at 2608 (if a party believed that bankruptcy court lacked authority to decide the claim, "then [the party] should have said so — and said so promptly"). In this case, Appellant's objection to the bankruptcy court's adjudicative authority "more closely resembles an afterthought than a bona fide objection." *See In the Matter of OCA, Inc.*, 551 F.3d 359, 369 (5th Cir. 2008). Specifically, John W. Baker never objected to the character of the proceedings before the bankruptcy court, did not request that the reference to the bankruptcy court be withdrawn, and after denial of his motion to compel, he filed a motion to reconsider which did not raise the core/non-core issue, conduct indicating he believed the bankruptcy court had authority to issue the final order denying his motion to compel. Based on this record, the Court concludes that John W. Baker consented (and forfeited any argument to the contrary) to the bankruptcy court's resolution of his core and non-core matters. *See In the Matter of OCA, Inc.*, 551

---

[3]The Court recognizes that in the post-confirmation context, the jurisdiction of bankruptcy courts is more limited because the estate no longer exists. *See In re Craig's Stores of Texas, Inc.*, 266 F.3d 388, 390-91 (5th Cir. 2001). In this case, the Court determines that there is a close nexus to the bankruptcy plan or proceeding sufficient to uphold bankruptcy court jurisdiction over this matter. Here, the principal purpose of the Amended Order of Sale is to aid the implementation of the Plan by liquidating the Debtor's farm and ranch real estate to pay creditors, the goal of a Chapter 12 proceeding. Deciding whether the Deed was at odds with the Plan and Amended Order of Sale, which John W. Baker argues, requires interpretation of the Amended Order of Sale. Therefore, this contested matter maintains a close nexus to the confirmed Chapter 12 Plan sufficient to uphold the bankruptcy court's jurisdiction to decide the motion to compel and reconsider.

F.3d at 368 (finding that a party impliedly consented to bankruptcy court's adjudicative power to enter final orders and judgments on non-core matter where he failed to object in the bankruptcy court, and never raised core/non-core issue when he sought to set aside adverse ruling in the court below); *see also In re Acevedo*, 472 B.R. 360 (Bankr. D. Mass. 2012) (determining that defendants implicitly consented to entry of final orders in an adversary proceeding containing a mix of core and non-core claims because the defendants moved for summary judgment on all counts without raising any authority issues); *Ryckman v. Ryckman*, 468 B.R. 754 (Bankr. W.D. P. 2012) (holding that commencing an adversary proceeding and having neither requested relief from the stay or withdrawal of the reference constituted consent to bankruptcy court final adjudication of core and non-core matters). In short, the Court need not consider his objection to the bankruptcy court's authority to enter final orders, raised only now after he is dissatisfied with the bankruptcy court's ruling. *Stern*, 131 S.Ct. at 2607-2608.

For the foregoing reasons, the Court concludes that the bankruptcy court had subject matter jurisdiction and statutory authority to enter final orders denying the motions to compel and to reconsider. Finding no error in the bankruptcy court's issuance of final orders in the proceeding below, the Court rejects Appellant's first point of error.

### B.      *Second and Third Points of Error - Denial of Motions to Compel & Reconsider*

In support of his second point of error, Appellant argues that the trial court erred in "finding that the debtor did not own any right, title, or interest in the mineral Estate at the time of the sale, and such finding was clearly erroneous in light of the documents and evidence presented at trial, and should be reversed." Appellant's Brief at 21. Appellant further contends that the "trial court erred in finding that the liens and claims that were terminated and attached to the proceeds were liens and

claims on what the Debtor owned, and not the mineral Estate that had been allegedly transferred previously." *Id.* Appellant contends that the "court below had no jurisdiction over this issue, but if the Court believes otherwise, such finding was clearly erroneous in light of the documents and evidence presented at trial and should be reversed." *Id.* at 21-22.

In support of his third point of error, Appellant complains of the following errors by the lower court in denying his motion to reconsider: "(a) refusing to recognize its lack of jurisdiction to determine the non-core issue of erroneous deeds reserving minerals in Debtor's ex-wife Joan Baker in direct contradiction to the Texas divorce decree between Debtor and Mrs. Baker; (b) not addressing relief requested in the Motion to Reconsider; (c) not issuing Findings of Fact or Conclusion of Law on a contested non-core matter; (d) not addressing John W's request for clarification or correction of its orders regarding the sale to him; (e) refusing to reverse its finding that John W waived his right to complain of Debtor's violation of the court's orders regarding the sale; and (f) failing to clarify its vague and ambiguous ruling in its Order Denying John W's Motion to Compel stating that its decision was based "largely [on] the reasons articulated in [Debtor's] response to the Motion." *Id.* at 22.

First, the record before the Court shows that the Deed did not contradict the Amended Order of Sale. The Deed conveyed Debtor Estate's interest in Poppies to John W. Baker. The March 1, 2012 Amended Order Approving Sale provided in relevant part:

> ¶ 3    Debtor, without any need for further Court authority, is authorized to execute a general warranty deed *conveying the estate's interest*, surface and mineral, in the property to the purchaser and is authorized to execute any additional documents deemed proper and necessary to convey the Property as may be necessary and appropriate to close the sale.

BR Vol. II, p. 157 (emphasis added).  Appellant would have the Court read paragraph 3 of the Amended Order of Sale to require Debtor to convey "Poppies," when the order specifically requires conveyance of the "estate's interest" in Poppies.  It is axiomatic that Debtor's Estate cannot convey more than it owns, and the Court will not read the Amended Order Approving Sale in such a tortured fashion.  The record also shows that the Deed plainly excepted prior "mineral severances" from the conveyance.  BR Vol. II, pp. 82-86.  From this evidence, as well as the Court's prior approval of the Divorce Decree and the property division therein (whereby Joan Baker reserved the mineral interests in Poppies as part of the divorce decree), the bankruptcy court found that the Deed did not require alteration, as it conveyed all of Debtor Estate's interest in Poppies, which did not include mineral interests at the time of the sale.  BR Vol. V, pp. 847-48.

The Amended Order of Sale also provided:

¶ 6    The transfer of title to the Property . . . is a valid, legal, and effective transfer of the Property, and vests the Purchaser with all of Debtor's rights, title, and interest in and to the Property free and clear of all claims, encumbrances, liens, and interests that have or could have been asserted by Debtor, any creditor, or any other person or entity.

BR Vol. II, p. 157.  The bankruptcy judge, in interpreting his own order approving sale found that the liens and claims that were terminated and attached to the proceeds were liens and claims on what the Debtor's Estate owned, and not the mineral estate that had been transferred previously.  BR Vol. V, p. 850.

The record also shows that under the title commitment, if there was any error in regard to the sale of Poppies, John W. Baker contractually waived the right to complain about the error by failing to object within seven days of receipt of the title commitment, and by failing to object by closing on the sale.  A review of the record shows that under the Chapter 12 Plan and Supplemental Order,

Debtor and John Wayne Baker were required to enter into a Texas Real Estate Commission Farm and Ranch Contract for the sale of Poppies, under which the title company provided a title commitment to John W. Baker, which contained a reservation for "all oil, gas, and other minerals in and under and that may be produced from the property . . . reserved unto grantor in Special Warranty Deed from Joan Baker to Joe Gayle Baker, dated March 2, 2011, recorded under Clerk's File No.D111-52947 in the official Public Records of Hardeman County, Texas[.]" BR Vol IV, p. 611. The title commitment relating to the sale of Poppies also provided in relevant part:

> (a) 6. B. COMMITMENT: Within 20 days after the Title Company receives a copy of this contract, Seller shall furnish to Buyer a commitment for title insurance . . .
>
> (b) 6. D. OBJECTIONS: Buyer may object in writing to (i) defects, exceptions, or encumbrances to title . . . disclosed in the Commitment . . . Buyer must object the earlier of (i) the Closing Date or (ii) 7 days after Buyer receives this Commitment . . . Buyer's failure to object within the time allowed will constitute a waiver of Buyer's right to object . . .

BR Vol. IV, pp. 621-22. The record contains no evidence that John W. Baker objected either by the closing date or within seven days after receiving the commitment. Instead, the record shows that he only objected after he received full payment on his claim in the Chapter 12 proceeding for $100,000.00.

Texas law embraces the classic definition of waiver as the intentional relinquishment of a known right or intentional conduct inconsistent with claiming the right. *Johnson v. National Flood Insurers Assn.*, 398 F. Supp. 1383, 1388 (S.D. Tex. 1974). A waiver of rights may result where a party demonstrates intentional relinquishment of rights of which the party has full knowledge.

18

*Regional Properties, Inc. v. Financial & Real Estate Consulting Co.*, 752 F.2d 178, 183 (5th Cir. 1985).  The bankruptcy court's waiver findings, and inferences based on the findings, are reviewed under the clearly erroneous standard.  *In re Ambassador Park Hotel*, 61 B.R. 792, 798 (N.D. Tex. 1986); Fed. R. Bankr. P. 8013.  From this court's review of the record, and Texas law on waiver, the Court concludes that the bankruptcy court did not commit error in finding that John W. Baker waived his rights to object to the Deed by failing to object as required by the plain and unambiguous language in the title commitments, and by waiting to object until after he received his $100,000.00 from the trustee under the provisions of the Plan.

Having reviewed the record and the bankruptcy judge's findings denying John W. Baker's motions to compel and for reconsideration, the Court concludes that Appellant has failed to demonstrate that the bankruptcy court clearly erred in its factual finding that the Deed conveyed all of Debtor Estate's interest in Poppies to John W. Baker in accordance with the terms of the Amended Order of Sale, and its factual finding that the liens and claims that were terminated and attached to the proceeds were liens and claims on what the Debtor owned, and not the mineral estate that had been severed from the Debtor's Estate previously.  The Court reaches the same conclusion with regard to the bankruptcy court's alternate holding that John W. Baker, by closing and filing Debtor Estate's Deed, contractually waived any right to complain about the conveyance because he failed to timely object under the terms of the title commitment.  The findings of the bankruptcy judge are based on a plausible account of the evidence considered against the entirety of the record below. The Court is not left with the "definite and firm conviction that a mistake has been committed."  *See In re Johnson Southwest, Inc.*, 205 B.R. 823, 827 (N.D. Tex. 1997) (Fitzwater, J.) ("If the trier of fact's account of the evidence is plausible in light of the record viewed in its entirety, the appellate

court may not reverse it."). Furthermore, even if Appellant's construction of the evidence is permissible, the bankruptcy court's choice of another plausible view cannot be clearly erroneous.

As to Appellant's argument that the bankruptcy court erred in failing to recognize its lack of jurisdiction to issue final orders in this contested matter, these arguments were already raised by Appellant in point of error number one, and rejected by the Court.  For the reasons already provided above, the Court rejects Appellant's challenge to the bankruptcy court's jurisdiction raised again in points of error two and three.

### C.      Fourth Point of Error

Appellant argues the bankruptcy court erred by finding that the Deed conveyed to movant "'all of Debtors surface and mineral interests that the bankruptcy estate had or owned at the time of conveyance,' because the odd deed given by Debtor had glaring and substantial reservations and exceptions contrary to the clear orders of the bankruptcy court regarding the sale." Appellant's Brief at 23.  Appellant already made this argument in points of error two and three, and the Court has already determined that the bankruptcy judge's findings on this point were not clearly erroneous. *See supra*, Sec. III.B.

### D.      Fifth Point of Error

Appellant argues that the bankruptcy court erred in its finding, contained in the order denying the motion to compel, that "under the sales contract, such title problems as those complained of by Movant were waived by closing."  Appellant's Brief at 5.  Appellant further contends the bankruptcy court erred in its finding that "Movant as buyer was aware of exceptions to the conveyance in the title commitment, did not object to such exceptions, and closed the sale[.]" *Id.* at 6.  According to Appellant, these findings of waiver were clearly erroneous requiring reversal.

Appellant already made this argument in points of error two and three, and the Court has already found that the bankruptcy judge's findings on this point were not clearly erroneous. *See supra*, Sec. III.B.

### E.    Sixth Point of Error

Appellant contends that the bankruptcy court erred in entering vague and ambiguous findings in its order denying the motion to compel, including the statement that it was denying the motion to compel "largely for the reasons articulated in the response to the motion." Appellant's Brief at 6. The Court has carefully considered the orders and concludes that the findings are sufficiently clear and unambiguous.  Nothing in the bankruptcy rules prevents a court from including, by reference, arguments raised in a brief by a party.  In short, the findings are not clearly erroneous, and the Court rejects Appellant's sixth point of error.

### F.    Seventh Point of Error

Appellant argues that the bankruptcy court erred in its findings contained in its order denying the motion to reconsider in stating that its "Amended Order Approving Sale, entered on March 1, 2012 is 'not subject to rejection, avoidance, or challenge by Debtor or his sons Jim Baker and John Baker,' if by such ruling the court means that such order has any application to Appellant." Appellant's Brief at 6.  This Court understands this statement to apply to Debtor and his sons. Further, the bankruptcy judge did not base his denial of the motions to compel and reconsider on this finding.  Instead, he ruled that John W. Baker had waived any right to object under the clear terms of the title commitment.  Accordingly, the Court concludes that this finding is not clearly erroneous and rejects Appellant's seventh point of error.

21

**IV.    Conclusion**

The orders appealed from are AFFIRMED.  Each party shall bear its own attorney's fees. Pursuant to Rule 8014 of the Federal Rule of Bankruptcy Procedure, costs of this appeal are taxed against Appellant John W. Baker and in favor of Appellee Charles Hamill Jeffrey Trust.  This matter is closed.

**SO ORDERED** this **10th day** of **February, 2014.**

Reed O'Connor
**UNITED STATES DISTRICT JUDGE**